IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**YVETTE A. GARCIA,**

        Plaintiff,

vs.                                            11cv614 RHS/ACT

**M.F. TRUJILLO and BRIAN VIGIL,**

        Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Yvette Garcia, pro se, alleges that Defendants Rio Arriba Sheriff Deputies M.F. Trujillo and Brian Vigil violated the law in multiple ways during a traffic stop (Doc. 1). The Deputies assert qualified immunity and move for summary judgment on all of Ms. Garcia's claims against them (Doc. 27). After a careful review of Defendants' Motion for Summary Judgment (Doc. 27), Plaintiff's Response (Doc. 29), Defendants' Reply (Doc. 30), both Deputies' dashboard camera videos, and all of the pleadings on file in the case, the Court concludes that the Defendants' Motion for Summary Judgment should be GRANTED.

## UNDISPUTED MATERIAL FACTS

The Deputies stated facts which they contend are not in dispute and the Deputies cited to evidence for each point, in compliance with Fed. R. Civ. P. 56(c) and D.N.M.LR-Civ 56.1(b). Ms. Garcia appears to dispute some of the Deputies' facts, but there is not any citation to evidence as required by Fed. R. Civ. P. 56(c) and D.N.M.LR-Civ 56.1(b). Ms. Garcia did not address some of the Deputies' assertions at all. According to the Federal Rules of Civil Procedure, "If a party . . . fails to properly address another party's assertion of fact as required by

Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ." Fed. R. Civ. P. 56(e).  The local rules also state that "All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."  D.N.M.LR-Civ. 56.1(b). Thus, the Court generally adopts the following facts as presented in the motion and undisputed in the response brief.

    1.  On July 18, 2008, Rio Arriba County Sheriff's Deputy M.F. "Freddie" Trujillo was on duty.  He started his shift at 11:00 a.m. and was en route to patrol Rio Arriba County roads in the vicinity of Abiquiu Lake.  Declaration of M.F. "Freddie" Trujillo, Exhibit 1, ¶¶ 5-6.

    2.  Deputy Trujillo was in a marked patrol car, in full uniform and displaying his badge of office. Exhibit 1, ¶ 5.

    3.  At approximately 11:08 a.m., Deputy Trujillo was proceeding toward Abiquiu Lake. He was intending to stop at his office and then proceed north on U.S. Highway 84/285. Exhibit 1, ¶ 6.

    4.  Deputy Trujillo was stopped at a red light at the intersection of State Road 30 and County Road 0002.  That road intersects with U.S. Highway 84/285. Exhibit 1, ¶ 6.

    5.  While at the red light, Deputy Trujillo observed a red Mini Cooper almost strike another vehicle on U.S. Highway 84/285 by cutting it off and then trying to force its way into a turn lane in order to proceed north.  Exhibit 1, ¶¶ 6-7.  Ms. Garcia attempts to dispute this point. At her deposition, she testified, "So I chose to go through the right turning lane because I clearly saw that the Suburban was in the left turning lane" (Doc. 30-1 at 8).  In her response (Doc. 29), which is not a sworn statement, Ms. Garcia contradicts her deposition by stating that she "moved into the left hand lane, with the vehicle in front of her continuing on in the right hand lane.  She at no time cut another vehicle off or forced them to swerve" (Doc. 29 at 5).  Ms. Garcia has not

disputed Defendant's fact with citation to any admissible evidence as required by Fed. R. Civ. P. 56(c). Therefore, the Court considers the fact undisputed.

6. Deputy Trujillo activated his overhead lights, proceeded onto U.S. Highway 84/285, intending to pull over the vehicle. Upon activating his lights, the red Mini Cooper pulled over in the middle of the divided roadway. Deputy Trujillo pulled in behind the vehicle. Exhibit 1, ¶¶ 7-8.

7. Deputy Trujillo called in the license plate of the vehicle, NM 006NPK, and the location of the stop. He then exited his vehicle and approached the red Mini Cooper. Exhibit 1, ¶ 8.

8. Deputy Trujillo approached the red Mini Cooper from the driver's side. When he reached the vehicle, he determined that a young female, later identified as the Plaintiff in this matter, Yvette A. Garcia, was driving the vehicle. Seated in the front passenger seat was a young male. Exhibit 1, ¶¶ 9-10.

9. Deputy Trujillo detected a strong odor of marijuana emanating from inside of the vehicle. He also noticed a device used to smoke marijuana, commonly known as a "bong," on the back floor board in plain view. He asked Ms. Garcia if she had been smoking marijuana. Exhibit 1, ¶¶ 9-10.

10. Ms. Garcia produced three baggies of a green leafy substance that she said was marijuana. Based on his education, training and experience, the green leafy substance appeared to Deputy Trujillo to be marijuana. Exhibit 1, ¶ 10.

11. Deputy Trujillo asked the passenger to exit the vehicle. He did so and was placed in Deputy Trujillo's patrol vehicle. Exhibit 1, ¶ 13.

12. Ms. Garcia became quite agitated with Deputy Trujillo for pulling her over. Deputy

Trujillo radioed dispatch to send assistance to him.  It was Deputy Trujillo's intention, based on what he observed and Ms. Garcia's admissions, to place her under arrest for unlawful possession of marijuana and to cite her for careless driving.  Deputy Trujillo, however, needed to get to Abiquiu Lake to patrol.  He was also retiring in ten (10) days and wanted assistance from another deputy who would be free to prosecute Ms. Garcia on the charges after he retired.  Moreover, Ms. Garcia was exhibiting hostile behavior which might require the assistance of an additional deputy to address.  Exhibit 1, ¶ 11.

13. Deputy Vigil was dispatched to the scene and arrived shortly after being dispatched. He was in a marked patrol unit, in full uniform and displaying his badge of office.  Exhibit 1, ¶ 12; Declaration of Brian Vigil, Exhibit 2, ¶¶ 4-5.

14. Deputy Vigil parked his patrol unit behind Deputy Trujillo's vehicle. Exhibit 1, ¶ 12; Exhibit 2, ¶¶ 6-7.

15. He approached Deputy Trujillo, asked Deputy Trujillo what he had and was advised by Deputy Trujillo as to the nature of the stop, his observations on approaching the stopped vehicle and what admissions Ms. Garcia had made before Deputy Vigil's arrival.  Deputy Trujillo proceeded to his patrol vehicle to make sure his dash camera was working and to complete a motor vehicle citation for careless driving.  Deputy Vigil approached Ms. Garcia's vehicle.  Exhibit 1, ¶ 14; Exhibit 2, ¶¶ 8-9.

16. Deputy Vigil could detect an odor of burnt marijuana emanating from inside Ms. Garcia's vehicle.  Exhibit 2, ¶¶ 9-10.

17. Deputy Vigil engaged Ms. Garcia in conversation about the matter while Deputy Trujillo walked back to his patrol unit to check his dash camera and to complete a citation for careless driving. Exhibit 1, ¶¶ 14-15, Sub-exhibit A; Exhibit 2, ¶¶ 9-10.

18. Ms. Garcia was quite agitated, protesting that Deputy Trujillo had no reason to pull her over.  At one point, Ms. Garcia attempted to pull off her clothes in the middle of the roadway for no apparent reason.  Exhibit 1, ¶¶ 16-17; Sub-exhibit B; Exhibit 2, ¶ 10.  Ms. Garcia disputes that she attempted to pull off her clothes.  However, the Court has viewed the tape numerous times, which belies Ms. Garcia's response brief.  At time stamp 11:13:51, Ms. Garcia starts to untie the shawl from her waist that she was wearing like a skirt and at time stamp 11:14:00, she drops the wrap from her hands and she pulls her dress up to expose her underwear or bikini swimsuit.  The United States Supreme Court in Scott v. Harris, 550 U.S. 372 (2007), held that when a videotape exists, it speaks for itself.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380.  Therefore, in light of the video tape available in this case, the Court concludes that Ms. Garcia has not genuinely disputed Defendants' statement that she attempted to remove her clothes.

Deputy Vigil then gave Deputy Trujillo a visual signal that they would handcuff Ms. Garcia and removed his handcuffs from his belt. Exhibit 1, Sub-exhibit B; Exhibit 2, ¶ 10.

19.  Once Deputy Trujillo confirmed that his dash camera was operational, he reapproached  Deputy Vigil and Ms. Garcia.  The two then directed Ms. Garcia to the front of Deputy Trujillo's vehicle.  Ms. Garcia continued to be agitated, and as she reached the front of the vehicle, she stuck her right index finger in Deputy Trujillo's face, vehemently protesting that he had no right to pull her over.  Exhibit 1, ¶ 19, Sub-exhibit B; Exhibit 2, ¶¶ 11-12.  Ms. Garcia disputes this statement, but again does not cite to any admissible evidence as required by Fed. R. Civ. P. 56(c).  In her response, she states, "While Ms. Garcia was already in front of the vehicle

while discussing the circumstances with Officer Vigil, she explained to him the situation, illustrating to him by using hand gestures the movement of vehicles (word missing in original). Officer Vigil then grabbed Ms. Garcia's arm and placed hand cuffs on her wrists" (Doc. 29 at 7). The Court concludes that, for the purposes of the motion for summary judgment, there is not any material difference in the parties' accounts and therefore this point is not genuinely in dispute.

20. Since Ms. Garcia was going to be arrested anyway, Deputy Trujillo took the opportunity to grab Ms. Garcia's right hand/wrist and spun her around so she could be handcuffed.  Exhibit 1, ¶ 19, Sub-exhibit B; Exhibit 2, ¶ 12.

21. Ms. Garcia physically and verbally resisted Deputy Trujillo and Deputy Vigil's attempt to place handcuffs on her.  Both Deputy Trujillo and Deputy Vigil leaned Ms. Garcia over the hood of Deputy Trujillo's patrol vehicle so they could handcuff Ms. Garcia behind her back.  Exhibit 1, ¶ 20, Sub-exhibit B; Exhibit 2, ¶ 12.  Ms. Garcia attempts to dispute this, but in her deposition she said, "I don't deny that I was resisting at the time" (Doc. 30-1 at 3).  Ms. Garcia's response brief states that she was "questioning the reason for her arrest," and that she was "attempting to see what was happening" (Doc. 29 at 7).  The videotape and Ms. Garcia's own sworn testimony confirm Defendants' fact, so the Court concludes that there is not any dispute.

22.  Once she was handcuffed, Ms. Garcia was taken to Deputy Vigil's patrol vehicle. She physically and verbally resisted Deputies Trujillo and Vigil en route.  Exhibit 1, ¶ 21, Subexhibit B; Exhibit 2, ¶¶ 13-14.  While Ms. Garcia argues that this point is in dispute, the Court concludes that it is not for the same reasons stated in paragraph 21.

23. When they reached the back door of Deputy Vigil's patrol vehicle, Ms. Garcia resisted getting in the vehicle.  While she sat down, she would not place her legs inside the car.

Deputy Trujillo ordered Ms. Garcia multiple times to get in the vehicle.  Ms. Garcia refused. Exhibit 1, ¶¶ 22-23, Sub-exhibit B, Transcript, p.2, l.25 - p.3, l.22; Exhibit 2, ¶¶ 14-15.  Ms. Garcia attempts to dispute this, but again, her deposition testimony contradicts what she now claims in her response brief to the summary judgment motion.  At her deposition, she admitted to refusing to get in the vehicle and she admitted to being warned several times before being tased (Doc. 30-1 at 5).  She admitted in her response that her legs were outside the vehicle and that Officer Trujillo warned her that if she did not get inside the vehicle, that he would tase her (Doc. 29 at 8).  In sum, there is not any genuine dispute regarding this fact.

     24.  Due to Ms. Garcia's size, Deputy Trujillo did not want to get in a physical confrontation with Ms. Garcia to get her inside Deputy Vigil's patrol vehicle because of the risk that he might injure Ms. Garcia in doing so.  He also did not want to use an expandable baton or mace on Ms. Garcia due to the same risk of injury, particularly where if Ms. Garcia were maced, she may have suffered temporary impaired vision, which would pose a risk to her safety from passing motorists since the three were in the middle of a busy roadway.  He was also concerned about his own safety and that of Deputy Vigil in dealing with a belligerent Ms. Garcia in the middle of a busy road.  Deputy Trujillo thus gave Ms. Garcia multiple warnings to get in the vehicle or she would be tased.  Deputy Trujillo felt that multiple warnings about being tased would hopefully compel Ms. Garcia to heed his orders to get in the vehicle.  Exhibit 1, ¶¶ 24-25, Sub-exhibit B, Transcript, p.2, l.25 - p.3, l.22; Exhibit 2, ¶¶ 14-15.  Ms. Garcia attempts to dispute this statement, but does not offer any admissible evidence in compliance with Fed. R. Civ. P. 56(c).  Therefore, it is considered not disputed.

     25.  Ms. Garcia did not comply, however.  Instead, she dared Deputy Trujillo to tase her. Exhibit 1, ¶ 26, Sub-exhibit B; Exhibit 2, ¶ 15.  Ms. Garcia attempts to dispute this statement,

but does not offer any admissible evidence in compliance with Fed. R. Civ. P. 56(c). Therefore, it is considered not disputed.

26. Because Ms. Garcia would not comply with orders to get in Deputy Vigil's vehicle and was still physically and verbally resistant, Deputy Trujillo tased Ms. Garcia on the torso using the drive or dry stun mode of the taser. This is the least severe electrical shock that the taser inflicts. It requires that the taser have physical contact with the person tased, and it inflicts temporary, localized pain only. Exhibit 1, ¶¶ 26-27, Sub-exhibit B; Exhibit 2, ¶ 15. Ms. Garcia attempts to dispute this statement, but does not offer any admissible evidence in compliance with Fed. R. Civ. P. 56(c). Therefore, it is considered not disputed.

27. Upon being tased, Ms. Garcia said, "ow," but then commented "that it didn't hurt that bad, you know." She still did not get in the vehicle, however, continuing to physically and verbally resist orders to do so. Exhibit 1, ¶¶ 26-27, Sub-exhibit B; Exhibit 2, ¶ 15. Ms. Garcia attempts to dispute this statement, but does not offer any admissible evidence in compliance with Fed. R. Civ. P. 56(c). Therefore, it is considered not disputed.

28. Deputy Trujillo issued additional orders to Ms. Garcia to get in Deputy Vigil's vehicle. After cursing the two deputies, she dared Deputy Trujillo to tase her again. Exhibit 1, ¶ 28, Sub-exhibit B, Transcript, p.9, ll.1-19; Exhibit 2, ¶ 16. Ms. Garcia attempts to dispute this statement, but does not offer any admissible evidence in compliance with Fed. R. Civ. P. 56(c). Therefore, it is considered not disputed.

29. Deputy Trujillo ordered Ms. Garcia several more times to get in the vehicle. She resisted, so he tased her again on her torso in drive or dry stun mode. Ms. Garcia yelled, "ow," but this time she complied and got in Deputy Vigil's vehicle. Exhibit 1, ¶ 28, Sub-exhibit B; Exhibit 2, ¶¶ 16-17. Ms. Garcia attempts to dispute this statement, but does not offer any

admissible evidence in compliance with Fed. R. Civ. P. 56(c). Therefore, it is considered not disputed.

30. Once Ms. Garcia was secured in the back of Deputy Vigil's vehicle and the rear door was closed, Deputy Trujillo advised Deputy Vigil to activate his inside camera. Deputy Vigil did so and advised Ms. Garcia of that fact. Exhibit 1, ¶ 29, Sub-exhibit B, Transcript, p.5, ll.8-13; Exhibit 2, ¶¶ 17-18, Sub-exhibit C, Transcript, p.6, l.19 - p.7, l.4.

31. The deputies then conducted a search of the interior of Ms. Garcia's vehicle incident to Ms. Garcia's arrest. They were assisted in that regard by two officers from the City of Espanola Police Department. Items of evidence were seized from the vehicle, bagged and placed in Deputy Vigil's vehicle. Exhibit 1, ¶ 30, Sub-exhibit B; Exhibit 2, ¶ 20, Sub-exhibit D. Ms. Garcia attempts to dispute this but does not cite to any admissible evidence and therefore the Court concludes that is it not in dispute. This fact is also not material to the summary judgment motion.

32. While the search and seizure was occurring, the camera was rolling inside of Deputy Vigil's vehicle. Ms. Garcia is observed on the tape fidgeting, commenting on the charges and making light of her tasing, saying she was tased for five to ten seconds, "that was pretty good," she was "buzzing" and that it "[was] not all that bad actually." On the tape there are no outward physical manifestations of injury suffered by Ms. Garcia. Exhibit 2, ¶ 19, Sub-exhibit C.

33. Once the seizure of evidence was complete and Deputy Vigil took custody of same, a tow truck arrived on scene and prepared to tow Ms. Garcia's vehicle. Deputy Trujillo left the scene and proceeded to his office. Exhibit 1, ¶ 31, Sub-exhibit B; Exhibit 2, ¶ 19, Sub-exhibit D. Ms. Garcia's vehicle was towed from the scene by a private towing service. Exhibit 1, Sub-exhibit B; Towing Sheet, Exhibit 3.

34. Deputy Vigil then transported Ms. Garcia from the scene to the police station. En route, Ms. Garcia asks Deputy Vigil why she is being charged with "so much." She adds, "I didn't want to put the handcuffs on. I had weed." Deputy Vigil does not respond. Exhibit 2, ¶¶ 19-21, Sub-exhibit C, Transcript, p.11, ll.21-23. The response brief states, "Ms. Garcia disagrees with this statement." However, there is not any explanation provided and the Court concludes that the fact is not genuinely in dispute.

35. Deputy Vigil charged Ms. Garcia with municipal ordinance violations for possession of marijuana and resisting, evading or obstructing an officer. Exhibit 2, ¶ 21, Sub-exhibit E. Ms. Garcia disputes this because she says that she was never given a citation, which is immaterial to the motion for summary judgment.

36. After Ms. Garcia was processed at the police station, Deputy Vigil transported Ms. Garcia to the Espanola Detention Center where she was turned over to security personnel and booked into jail. Exhibit 2, ¶¶ 21-22, Sub-exhibit E.

**STANDARD OF REVIEW**

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a

verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

## ANALYSIS

In her Complaint, Ms. Garcia alleges a panoply of wrongs:

> The actions and omissions occurred in the course of an illegal stop, detention, Seizure, arrest and imprisonment of Plaintiff Yvette Garcia and give rise to cause of action sounding in tort and violations of Yvette Garcia rights, privileges and immunities under the laws and constitution of the United States and New Mexico. The acts consist of but are not limited to excessive force, false arrest, aggravated battery with a deadly weapon, to-wit: a tazer, aggravated assault with a deadly weapon, to-wit, taxer, intentional infliction of emotional distress.

(Errors in original).  The Deputies' motion for summary judgment organizes these allegations into recognizable claims, which are enumerated below.

### 1. Deputy's Trujillo's Traffic Stop Was Legal.

Ms. Garcia alleges that the Deputy Trujillo illegally stopped her vehicle.  Defendants counter that the stop was legal, and move for summary judgment.  A traffic stop must be supported by a reasonable, articulable suspicion that criminal activity is afoot.  United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997).  Deputy Trujillo witnessed Ms. Garcia almost strike another vehicle by cutting it off and then trying to force her way into a turn lane (Fact 5), contrary to state traffic laws.  New Mexico statute requires that, "Any person who operates a vehicle in a careless, inattentive or imprudent manner, without due regard for the width, grade, curves, corners, traffic, weather and road conditions and all other attendant circumstances is guilty of a misdemeanor.  NMSA 1978 § 66-8-114.  Once Deputy Trujillo witnessed Ms. Garcia nearly strike another vehicle, he had reasonable, articulable suspicion that Ms. Garcia had

violated the state traffic law and his stop was justified.  Ms. Garcia has not successfully disputed Defendants' version of events, nor did she address Defendants' legal arguments in her response brief (Doc. 29).  Therefore, the Court concludes that both the facts and the law weigh in favor of granting summary judgment to Defendants on this claim.

      2.    **The Arrest Was Lawful.**

Ms. Garcia alleges that the Deputies illegally arrested her and Defendants move for summary judgment on this claim.  The arresting officers must have probable cause for the arrest to be lawful.  "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" United States v. Valenzuela, 365 F. 3d 892, 896 (10th Cir. 2004) (internal citations omitted).  After Deputy Trujillo stopped Ms. Garcia's vehicle, Deputy Trujillo detected a strong odor of marijuana emanating from inside of the vehicle.  He also noticed a device used to smoke marijuana, commonly known as a "bong," on the back floor board in plain view.  He asked Ms. Garcia if she had been smoking marijuana (Fact 9).  Ms. Garcia then produced three baggies of a green leafy substance that she said was marijuana.  Based on his education, training and experience, the green leafy substance appeared to Deputy Trujillo to be marijuana (Fact 10).  Marijuana possession is generally illegal in New Mexico.  NMSA 1978 § 30-31-23.  Because the arresting officer had probable cause that Ms. Garcia had violated the laws against possessing a controlled substance, he had probable cause to arrest her.  Therefore, the arrest was lawful and summary judgment is granted in Defendants' favor on the false arrest claims.

      3.    **The Arresting Officers Used Reasonable Force.**

The arresting officers employed a taser to encourage Ms. Garcia to put her legs into the

police vehicle, which Ms. Garcia argues was excessive force. Ms. Garcia does not allege that the officers used any excessive force other than the taser. In order to determine whether using the taser was reasonable or excessive force, Courts rely on the "objective reasonableness" standard articulated in Graham v. Connor, 490 U.S. 386, 388 (1989). "The ultimate question 'is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" Casey v. City of Federal Heights, 509 F.3d 1278, 1281 (10th Cir. 2007). Another federal court has concluded that taser use is reasonable in a case with facts and circumstances substantially similar to what the officers faced with Ms. Garcia. Buckley v. Haddock, 292 Fed. Appx. 791 (11th Cir. 2008), involved a relatively minor basis for the arrest, a roadside location with traffic, a resisting arrestee, a warning to the arrestee about potential taser use due to resistance, and then taser use to gain compliance. The Court concluded that the taser use was reasonable in part based on the fact that officers have an interest in "arrests being completed efficiently and without waste of limited resources: police time and energy that may be needed elsewhere at any moment." Id. at 794. Given that Ms. Garcia had acted erratically prior to being placed in handcuffs and appeared to be intoxicated, traffic was whizzing by on both sides of the officers and arrestee, and Ms. Garcia refused to move her legs inside the patrol car when repeatedly instructed to do so, taser use was reasonable to effect the arrest and remove all individuals from the middle of the roadway. In sum, summary judgment is granted to the Deputies on the excessive force claim.

### 4. The Court Will Not Entertain the Claims for Intentional Infliction of Emotional Distress, Aggravated Assault or Any Other Unsupported State Tort Law Claims.

Ms. Garcia appears to assert that the arresting officers used the taser in such a way that they intentionally inflicted emotional distress. There is not any merit in this claim based on the

facts or law.  As for the facts, immediately after the officer tased Ms. Garcia, she noted that "Ow, it doesn't hurt that bad, you know" (Doc. 27-4, Exhibit B at 11:16:10, Fact 27).  After being tased the first time, Ms. Garcia still did not comply with the officer's order to get inside the vehicle. Consistent with her earlier attempt to undress in the roadway, she suggested that the officers would like to see her genitalia.  Then she says, "Tase me fucking again," (Doc. 27-4, Exhibit B at 11:16:34) which was indicative of Ms. Garcia's limited vocabulary throughout her encounter with law enforcement.  The officer complied with Ms. Garcia's request to be tased again and this time she screamed and moved her legs into the vehicle so that the officers could shut the door (Fact 29).  During her deposition, Ms. Garcia also admitted that she had not visited a counselor anytime from when she was tased in July 2008 until the time of her deposition (Doc. 30-1 at 6), which belies her claim that the taser incident caused emotional distress.  The Court is not aware of any facts to support the claim that Ms. Garcia suffered emotional distress from the time of the incident in July 2008 to when she filed her lawsuit in July 2011, let alone that the officer's use of a taser caused such distress.

   As for the law, Ms. Garcia has not provided information to suggest that intentional infliction of emotional distress, aggravated assault or any other related claim should be heard in federal court.  She has not cited to any federal statute or case law, or explained her position.  Instead she cites to the New Mexico Tort Claims Act, § 41-4-1, which is a state law.  Since the other federal claims will be dismissed, there is not any reason for this Court to exercise jurisdiction over this unsupported claim.  Therefore, all state tort claims will be dismissed.

   The Court has not reached the qualified immunity analysis as to any claim because it is not in dispute that the officers did not violate any constitutional right.

## CONCLUSION

The motion, response, reply and all exhibits submitted for judicial review have demonstrated that there is not any genuine dispute as to any material fact regarding whether Defendants violated any of Plaintiff's rights.  As a result, Defendant is entitled to judgment as a matter of law.  Defendant's Motion for Summary Judgment (Doc. 27) is GRANTED and the case is dismissed with prejudice.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE